Argument now in the case of Perez v. Guetschow. Good morning and may it please the court. We're here on an appeal of a denial of qualified immunity because an off-duty police officer who's working as a security guard at a middle school was injured in the process of breaking up a fight. The officer walks into the middle school cafeteria to monitor the lunch period and he almost immediately encounters a fight between two female students. They're flailing their arms at one another. They are flailing their arms at anyone else who gets in the way. There are also two angles of video surveillance that capture this. One in the corner of the cafeteria and then one from a cell phone held by a student in the cafeteria which is a separate problem altogether. The officer sees the situation. He immediately intervenes and he attempts to separate the fighting students but in the process he's thrown or falls backwards and he hits the back of his head on a cafeteria table and he blacks out for a moment. The appellee, Jane Doe, falls down with the officer. This situation it's a tinderbox and it's ready to catch fire and if it did the officer was significantly outnumbered. What's the evidence of the tinderbox? That's a big term. This is a middle school sixth through eighth grade. Correct. Okay I know one of the girls was 12 the other one I don't know the age. 12 or 13. Okay. If you see any of the video. I've watched it. The students are hooting and hollering and cheering and running around this cafeteria. It's an out-of- control situation and as the seconds continue to tick by it becomes more and more uncontrolled. I actually didn't see any students approach the area of the video cameras are from a distance across so you could see some movement but I didn't see any students approach the epicenter of the incident. The fight occurs at the edge of a couple cafeteria tables and some students back up to avoid the fight but some stay right where they are and one of the concerns of the officer is that this is going to escalate. That there are going to be more students joining the the rockets and in fact in the officer's deposition testimony when he hit his head on the cafeteria table he initially thought that somebody had punched him. Turned out not to be the case but that's the rockets that's the foray. The only other adult in the room handling this situation is a school guidance counselor who had her own hands full because she was involved in holding the other student involved in the fight back. So the officer needs to act quickly and he does. From the ground he places Jane Doe on her stomach. He admittedly puts his knee on the back of her neck for 33 seconds. Puts her in handcuffs and gets her out of that cafeteria as quickly as possible. From the point of the first push until Jane Doe is escorted from the cafeteria 44 seconds elapse. The only person hospitalized as a result of this incident was the officer who sustained a concussion and he missed two weeks of work after the incident ended. The district court indicated that the law was clearly established in its opinion denying qualified immunity that an officer cannot use excessive force on a non-resisting individual. That's a fairly obvious declaration of the law but it's also a pretty broad umbrella. The Supreme Court in Plumau versus Rickard cautioned not to use too high a level of generality when evaluating whether a particular use of force violated someone's constitutional rights and I think that's what happened here. This is too broad a standard to apply to this narrow set of circumstances, this narrow factual pattern. This past May in Felix versus Barnes the Supreme Court reminded us that events preceding an application of force matter a great deal to a court deciding a use of force case because it can't review the totality of the circumstances if it puts on chronological blinders. At the point in time where the court, the district court made its ruling in this case, it did not have the benefit of Felix versus Barnes which resolved a circuit split and clarified that earlier facts and circumstances may bear on a reasonable officer or whether a reasonable officer would have understood and responded to later facts and circumstances. The totality of the circumstances, especially the fact that an officer sustained a significant injury in this case, has to play a key role here. In analyzing the circumstances under their totality, we have to certainly analyze the Graham versus Connor factors, the severity of the crime, whether the suspect poses a threat, and whether there's active resistance or evading arrest, but we also have to focus on the circumstances that affect the officer and determine whether based on that set of circumstances the officer's actions were objectively reasonable. Post Barnes, the court cautions that the whole picture matters so much. The two questions on qualified immunity in this case are obviously was the use of force permissible under the Fourth Amendment, and let's briefly review. We have more than two questions. We have a question about whether there is appellate jurisdiction. That's been contested. I think it's well for you to address it. Sure. In terms of the jurisdictional question, the appellees have argued that there's material questions of fact here, and we dispute that because in large part the video places guardrails on how the factual questions can be characterized. Let me put it this way. The district court said that a reasonable jury could find that the defendant continued choking the minor after she had ceased resisting. That a jury could find that. And if that's true, is there any basis for qualified immunity? There is because the resistance of the suspect began before the actions of the officer. So there's a continuum. We know that. You should address my question. Look, the basic problem is the Supreme Court said in Johnson against Jones that one cannot use a qualified immunity appeal to get review of the district court's conclusions about what the facts support. In order to get review, you have to accept everything the district judge said a jury could conclude. The district judge said a jury could conclude that the defendant engaged in physical force, serious physical force, after he knew that resistance had ended. Now, under Johnson, that cannot be contested. So how is there immunity if we accept that as uncontested? Because the officer didn't know. That's just to deny what the district judge said a jury could find. And that's the very thing that Johnson says we cannot do on a qualified immunity appeal. All of the facts and circumstances, the big picture here... I know you are confident that your client will prevail on the big picture. You need to address the holding of the Supreme Court in Johnson against Jones. Look, I don't dispute that there was a knee on this girl's neck. I can't. And I do dispute that the court, the district court, didn't consider widely enough the injuries of the officer that could have played a role. It is the holding of Johnson against Jones that arguments of that sort cannot be made on a qualified immunity appeal. Now, where does that leave us? You haven't attempted to deal with the Supreme Court's jurisdictional holding. I believe that I have because I've argued that the entirety of the situation is enough to overcome the Johnson versus Jones. You cannot overcome a holding about jurisdiction. You might be able to overcome the district court's conclusions about what a jury could find. But you have to do that in front of the jury. You can't just say, I'm so sure the district judge is wrong that we'll just bypass the Supreme Court's jurisdictional rules. It doesn't work that way. Well, I'm accepting what the district court found in the fact that Jane Doe had stopped resisting at the time that the use of force was applied. That's a given. That's not in dispute here. But what I'm saying is the events leading up to that, the impressions that the court and this court can draw from this video is more than enough. There's a head injury that we're dealing with. She had not indicated her intent to surrender. She was not yet in custody. She was not handcuffed. She was flailing and fighting moments before she's on the ground. And the district court acknowledged that there was some flailing that occurred while she was on the ground. There's a room full of rowdy students. There's a short duration in terms of this fluid and dynamic situation. And this officer didn't have a crystal ball to predict whether Doe's intentions were to stop resisting or to reengage and rekindle her resistance. Nor did this officer have a stopwatch to count off the seconds since she last flailed at him. These facts are akin to the Abbott case, the Dockery case, the Brooks case, and the district court case out of the northern district of Indiana, Jones v. Fort Wayne, with the common thread that the suspects were resisting moments prior to the use of force, and they ceased physical resistance when force was used, but not yet submitted to the official. And that's what happened here. Can we address that this is a sixth-grade girl, a 12-year-old? These cases that you're citing probably involve adults who have allegedly committed a crime. You keep calling him an officer. I don't know what his title is, but he was not acting as a police officer when he was at the school, correct? His role is an off-duty police officer security guard. So he's acting as a security guard. Doesn't he need to adjust for the circumstances? Isn't that part of the totality of the circumstances test that you have been talking about? It is. To consider these are sixth-graders? Which is why, from my perspective, the officer acted as quickly as he possibly could, getting the situation under control and getting this girl out of the cafeteria. With that, I'll reserve the remainder of my time. Certainly, counsel. Mr. Devaney, before we get underway, I have a question about why one of the plaintiffs is called Jane Doe. Yes, sir. The reason for the pseudonym here had to do with her minority? Yes, but Federal Rule of Civil Procedure 5.2A.3 says that minors are identified by their initials. So why is she called Jane Doe rather than comply with the rule? Certainly, Your Honor. Well, the easy answer to that is it wasn't raised below, and I filed it as Jane Doe without awareness of that rule. All right. Do you have any objection to complying with the rule? No objection at all, Your Honor. So if you would file appropriate amendments, we will get the initials on file and get this done the right way.  And on the record, would you prefer I use her initials or Jane Doe for the argument? You just refer to her as the minor, as I did in conversation with Mr. McGaver. All right. And may it please the Court, my name is Drew DeVinney. I appear on behalf of the appellees, the minor, and Jerrell Perez. This appeal follows the district court's conclusion that genuine issues of material fact precluded the application of qualified immunity. Those material facts included whether or not a 215-pound adult used the knee-to-neck chokehold against a non-resisting child. It's well established that the use of any significant force against a non-resisting or subdued person is unreasonable. In this appeal, the appellants effectively disagree with numerous findings that the court made as to which facts were or were not disputed. Based on the appellants' positions on the factual issues in this case, this court does not have jurisdiction over this appeal. I want to start with the jurisdictional issues first. As this court has addressed in an interlocutory appeal on qualified immunity, the only issues at bar are the purely legal questions. There's an exception to that which doesn't apply in this case. That's the Scott exception in which if there is video evidence, as there is in this case, if there is video evidence that clearly demonstrates that the findings of the court were blatantly false or contradict the testimony of the plaintiff, the court can consider that evidence. However, as the appellant raised in their own brief, they don't dispute that the video evidence does not clearly resolve the factual determinations made by the court in this case. I want to focus on the specific disagreements that the appellants have with the district court's findings, the one that was just raised on argument resistance. The district court held that a reasonable jury could find that the minor was not resisting. That is a quoted holding, at least the word minor, from the district court's decision. Here on appeal, both in the principle brief, the reply brief, as well as an argument, we've heard argument from counsel as far as the extent of that resistance. The appellants do not have jurisdiction to disagree with the court's finding as far as non-resistance. There was an argument that I don't believe was raised on oral argument, but was raised in the appeals that the appellees had conceded some level of resistance, and I think that the inference there is that the district court didn't recognize that concession. The problem is that's also not reviewable. This court in v. LeGrand held that the court of appeal cannot review findings of fact even if this court were to find that the district court committed an error. That is simply just outside of the jurisdiction. Your Honors had noted some other disagreements that the appellants had with the district court's rendition, tinderbox. That goes to how the parties see the factual scenario that led to the use of force. The appellants hired a use of force expert in this case who reviewed it and said, and his conclusion was, look, this is your children. This is a school scenario. This isn't the, quote, very violent scenario that Officer Gutschow had presented in his testimony and didn't see the, quote, tinderbox scenario. The court considered the appellant's disagreement and said this is one of the many disputed facts that we're not able to resolve here. Another issue that has been raised, I think, more in the reply brief and more on oral argument has to do with Officer Gutschow's injury. That is also a disputed issue of fact. I think on oral argument I heard that Officer Gutschow had injured his head to the extent that he missed multiple weeks of work. That was a disputed fact in this case, for example. The appellants pointed out that Officer Gutschow testified that he actually missed work because he was stressed about the public attention to this case. And the district court acknowledged that that was one of the many disputes that it couldn't resolve. The other disputes, and I think one of the more primary disputes that really cuts to the core of this, is did Officer Gutschow intentionally or purposefully or knowingly apply a chokehold to a non-resisting child? And in their reply brief in the district court level, he admitted there was no justification for applying a chokehold. He denies that. The difference, the chasm between this is that on our side with expert testimony, our expert has looked at this and said this looks like a chokehold. This doesn't resemble any type of trained technique. This is a technique designed to restrict breathing or to restrict blood flow, a chokehold. Officer Gutschow says, no, I was attempting to perform a stabilization technique, maybe imperfectly. And my knee slipped. This was incidental contact. There's a huge difference between those two. And the court couldn't resolve that. And the reason that that is fatal to this appeal is that I don't think that you can hear any disagreement that if Officer Gutschow knowingly applied a chokehold to restrict this child's breathing, that that would have been unreasonable in this scenario. The other disputed fact that keeps coming up in this appeal is, and this kind of gets to when did resistance stop or when did control occur? The plaintiff's expert opined that Officer Gutschow had obtained control of the non-resistive child before applying the force. Here, we've heard arguments at the principal brief that she was continuing to resist while Officer Gutschow was attempting to apply the handcuffs. We've also heard then, well, maybe it was when she was in the prone position. In the reply brief, it was, well, she was resisting, but when they were on the ground at some point. Again, that's still demonstrating this is a disputed issue. But as to control, the plaintiff's expert had identified that moment in time. And obviously, the appellant disagrees with that. But that's a necessary finding to the extent that the appellees are arguing that the clearly established rule that significant force is unnecessary against a non-resisting person is somehow too broad. So that gets me to that argument. Is that because your expert, the plaintiff's expert, is of the view that the officer had control of the minor before the knee was placed on her neck? Correct. And that's also supported in the minor's testimony that she at no point was resisting the officer. If you look at the briefs, we included a moment, a screenshot just to show you at what point the plaintiff's use of force expert had determined this is the point where no further force is necessary. He has gained full control over this minor. Going to the argument that the rule against significant force against a non-resistive individual is too broad, I would push back hard on that. I believe you cited eight cases from this court that has held that that is a clearly established rule. They have cited a line of cases that does provide a sort of a narrower application of that rule when you're dealing with a violently resistive subject. In those cases, and I'm going to point to the Alicia versus Thomas case just because I didn't, I cited that case, but I think the facts of that case are worth discussing. That case had involved two different police officers who were subduing the subject. As to the second officer, the allegation in that case was that from the plaintiff that the plaintiff had stopped resisting and that officer had put his knee on that plaintiff's neck. Obviously, the officer said, no, this was a resistive plaintiff, and the court in that case held that that was a disputed issue of fact that precluded qualified immunity. But what the Alicia case addressed was that specific argument that the appellants are raising here, which was we had, in that case, even if the plaintiff was resisting, that the rule against force against a passively or non-resistive person prohibits force against a, the word that they used was a subdued suspect. That was the question, and that was the disputed issue. At that point, when that officer put his knee on that suspect's neck, was that suspect subdued? That was a disputed fact that the court held precluded qualified immunity just as it should preclude qualified immunity in this case. And in that case, the court even said that that would be notwithstanding the suspect's prior behavior, which would include resisting, but also threatening safety or even carrying a weapon, which is not at all at play in this case. I'm going to go to your Honor's point about the fact that we're not dealing with an adult here. Yes, there was a fight, but we're not talking about breaking up a bar fight between two intoxicated and potentially armed adults. And this cuts to the core of what I've already said, which is the dispute about the entirety of the circumstances in this case. Whether this really did pose any sort of danger, whether there was resistance, the amount of resistance, the force, the amount of force. And finally, with my limited time, I just wanted to address one other issue that was sort of discussed on the oral argument, and that's to do with the officer's injury. I touched on it slightly, but one of the things that's missing in this record is if he did hit his head, which he did, the extent of that injury, they say he lost consciousness. During his deposition testimony, he specifically said, I never lost consciousness. But there's no evidence that that injury affected his judgment in any way. And the issue in this case is, would a reasonable officer have perceived that there was resistance or a non-subdued subject? And there's no evidence that him hitting his head and not losing consciousness and having headaches for two weeks, not to downplay the injuries, but the point of that is that it doesn't overcome the clearly established law and the facts that are in front of this court, which is that it is a dispute. Was she resisting? Was she subdued? And because those issues are in dispute, there is no jurisdiction, and this appeal should be dismissed. And even if jurisdiction is found on the merits of the clearly established law, the court's decision should be affirmed. Thank you. I see the rest of my time. Unless there's counsel, follow-up questions. Anything further? Mr. McDavid. Yes, we're dealing with a child here, but the officer still got hurt in the process. In terms of the jurisdictional issue, we're not challenging the findings of the district court. Of course, the district court didn't make any findings. The judge can't make findings. You are challenging the judge's appreciation of what the jury could find on this record, and that's the thing that Johnson says an appellant can't do. That's my problem. I understand, and I agree with counsel Filipelli that the Scott exception does not apply here, but I do not believe that a jury could find that the actions of the officer— In other words, you were challenging the district court's conclusions about what a jury could find. Now, how is that position consistent with Johnson against Jones? Jurisdiction has been challenged in this appeal. Your reply brief doesn't cite or discuss Johnson. I have offered you the opportunity to discuss Johnson, and so far you have not done so. This is your last chance. I understand, Your Honor, and all I can say in response to the court's inquiry is that I go back to the totality of the circumstances here, that the events preceding the use of force here were more than ample to justify what occurred. Just very briefly, there were some comments made about the intentions of the officer, and the intentions of Officer Gottschalk, they simply don't matter. Even if he intentionally utilized a chokehold on this girl, which I don't think anyone is saying, it doesn't matter. So, with that, thank you for your time. Thank you, counsel. The case is taken under advisement.